Nestor Romero (SBN 355535)
nestor@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Frederick Chernoff (SBN 342412)
fred@handslawgroup.com

The Law Office of Hakimi & Shahriari
15760 Ventura Blvd., Suite 650
Encino, CA 91436
Telephone: (888) 635-2250

Attorneys for Plaintiff,
Pedro Siqueiros

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Pedro Siqueiros, an individual,<br>Plaintiff,<br>v.<br><br>UPLAND ALLIANCE, LLC, a California limited liability company; EL POLLO LOCO, a business of unknown form; and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>Assigned to:<br><br>**COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51, *et seq.***<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Pedro Siqueiros, an individual (hereinafter referred to as "Plaintiff"), complains of UPLAND ALLIANCE, LLC, a California limited liability company; EL POLLO LOCO, a business of unknown form; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I. PARTIES

1. Plaintiff, Pedro Siqueiros, is a California resident with physical disabilities. Pedro Siqueiros suffers from a muscle nerve disease called Leukodystrophy. This causes him to have difficulty in movement, balance and coordination. He needs a cane for mobility. Plaintiff is a disabled person under the California Unruh Civil Rights Act ("UCRA") (see Cal. Civ. Code §§ 51, et seq., 52, et seq.), the Americans with Disabilities Act ("ADA") (see 42 U.S.C. § 12102, et seq.), and other statutory laws that protect the rights of "disabled persons."

2. Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.

3. Plaintiff was in the geographic area of Defendants' property and business in order to purchase churros.

4. Plaintiff desired to access Defendants' business in order to purchase churros.

5. Defendant UPLAND ALLIANCE, LLC, owns/owned the property (the "Property") located 760 E Foothill Blvd, Upland, CA 91786 at all relevant

times.

6. There is a business establishment on the Property named El Pollo Loco (the "Business").

7. Defendant El Pollo Loco, a business of unknown form is/was a lessee of the Property, owns/owned the Business named El Pollo Loco and has/had control over its Business at all relevant times.

8. The Business is a public accommodation as defined by 42 U.S.C. § 12181(7), and California Health and Safety Code § 19955.

9. Prior to filing suit, Plaintiff *unsuccessfully* sought relief through an informal notice to the defendants to remove the architectural barriers encountered by Plaintiff at the Property. Through their actions and inactions, Defendants made clear that this lawsuit needed to be filed. Litigation is Plaintiff's only recourse and is necessary to address the widespread discrimination that continues to occur, unchecked, throughout California over the thirty-five (35) years after the Americans with Disabilities Act became law and created prohibitions against disability access discrimination. Sadly, access barriers like the barriers encountered by Plaintiff at Defendants' Property are ubiquitous and most defendants, like the Defendants in this case, will not remove access barriers absent the filing of a lawsuit. The Business is a public accommodation as defined by 42 U.S.C. § 12181(7), and California Health and Safety Code § 19955.

10. Plaintiff visited the Business. Plaintiff has reasons for the visits and

has reasons to want to go back but for the access barriers. Plaintiff visited the Business to purchase churros.

11. Does 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

12. Plaintiff alleges that Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, representative partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants; and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

13. Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

14. Plaintiff visited the Business to purchase churros.

15. The Defendants' cost to fix their Property to be in compliance with the

law is infinitesimally small compared to the value of just this Property.

16. For over twenty-four (24) years, the Property's owners and operators saved money on remediations and maintenance as well as the money saved when they cut corners when initially designing the Property and its buildings. The Defendants saved in at least three ways. Even if they finally bring the Property into minimal compliance, they have avoided the necessary business costs that other law-abiding property owners did not avoid. This unfair refusal to follow the law gave Defendants an unfair business advantage over their law-abiding counterparts. If property owners are allowed to avoid minimal compliance until a lawsuit is filed, then the Courts will be overwhelmed, and compliance with the law will be discouraged.

## II. JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (the "ADA").

18. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the ADA.

19. Venue is proper in this Court because Defendants conduct substantial business in this county, and the real property that is the subject of this action is

located in this county. Venue is also proper because Plaintiff's cause of action arose in this county.

## III. FACTS

20. The Property and/or the Business owned, leased, and/or operated by Defendants is a facility that is open to the public and includes a business establishment.

21. The Property has been newly constructed, and/or underwent remodeling, repairs, and/or alterations since 1992, and Defendants have failed to comply with California access standards that applied at the time of each new construction and/or alteration or failed to maintain accessible features in operable working condition.

22. Plaintiff visited the Property during the relevant statutory period on one (1) occasion, on the following day to patronize the Business on the Property: March 18, 2026.

23. The premises violated applicable California and federal construction-related accessibility standards, including Title 24 of the California Code of Regulations (California Building Standards Code), Part 36 of Title 28 of the Code of Federal Regulations (28 CFR Part 36), the ADA Standards for Accessible Design ("ADAS"), and the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG").

24. Defendants did not offer persons with disabilities equivalent facilities,

privileges, and advantages offered by Defendants to other patrons.

25. Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

26. Parking, route(s) of travel, signage, Business entrance, Business interior, and other architectural amenities for patrons visiting the Property are among the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

27. However, there were inadequate accessibility features for disabled persons at the Property. Defendants' facilities did not comply with the ADAS, ADAAG, and/or the California Building Code ("CBC").

28. When Plaintiff visited the Property, Plaintiff experienced multiple access barriers, including but not limited to barriers related to doors, parking, restrooms, routes of Travel, and signage. This list of barriers and violations is not exhaustive or completely inclusive. There are other barriers that Plaintiff encountered at Defendants' Property and Business.

Plaintiff encountered the following barriers at Defendants' facilities:

This Property, which serves the El Pollo Loco, has major UNRUH/ADA violations throughout.

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.** The cross slopes of the route/path of travel from the designated disabled

parking space to the business/building entrance, are greater than two percent (2%). It is difficult for Plaintiff to navigate with Plaintiff's mobility device(s) on surfaces with excess slopes. Plaintiff, a mobility device user, is at risk of falling when there are surfaces with excess slopes. The presence of excess slopes denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult and/or uncomfortable for Plaintiff to traverse the property/route with Plaintiff's mobility device. The barrier also deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to traverse the property/route with Plaintiff's mobility device.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5**. Floor and ground surfaces shall be stable, firm, and slip resistant. Changes in level of 1/4 inch high maximum shall be permitted to be vertical and without edge treatment. Changes in level between ¼-inch high minimum and ½-inch high maximum shall be beveled with a slope not steeper than 1:2. Changes in level greater than 1/2 inch high shall be ramped. The route of travel, including from the designated disabled parking space(s), has an uneven ground surface with changes in level exceeding one-half inch (1/2") (and no ramps are provided). The route of travel has damaged ground which is not flush or flat. The ground has pavement distresses. Plaintiff, a mobility device user, cannot safely and fully enjoy the premises when such conditions are

present. These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff's foot, and/or mobility device may catch on the uneven ground causing Plaintiff to fall. These abrupt changes in level pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to trip/fall than someone without disabilities. The excess changes in level (i.e., uneven ground) denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/harder and more dangerous for Plaintiff to traverse the property/route with Plaintiff's mobility device. The excess changes in level (i.e., uneven ground) also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder and more dangerous for Plaintiff to traverse the property/route with Plaintiff's mobility device.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1, 303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019 CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5**. Floor and ground surfaces shall be stable, firm, and slip resistant. Changes in level of 1/4 inch high maximum shall be permitted to be vertical and without edge treatment. Changes in level between ¼-inch high minimum and ½-inch high maximum shall be beveled with a slope not steeper than 1:2. Changes in level greater than 1/2 inch high shall be ramped. The route of travel, including from the public way(s) to the entrance of the building/business, has an uneven ground surface with changes in level exceeding one-half inch (1/2") (and no ramps are provided). The route of travel has damaged

ground which is not flush or flat. The ground has pavement distresses. Plaintiff, a mobility device user, cannot safely and fully enjoy the premises when such conditions are present. These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff's foot, and/or mobility device may catch on the uneven ground causing Plaintiff to fall. These abrupt changes in level pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to trip/fall than someone without disabilities. The excess changes in level (i.e., uneven ground) denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/harder and more dangerous for Plaintiff to traverse the property/route with Plaintiff's mobility device. The excess changes in level (i.e., uneven ground) also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder and more dangerous for Plaintiff to traverse the property/route with Plaintiff's mobility device.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.** The paint used for the designated disabled parking space is so worn and aged that it cannot (can hardly) be seen. This makes it unclear where the actual designated disabled parking space is, and it makes it difficult for Plaintiff to use the space. As a mobility device user, Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff, as opposed to

individuals who do not use mobility devices, to maneuver about the Property. When the paint for the designated disabled parking space is worn and aged, there is a greater risk that non-disabled patrons will park in the designated disabled parking space, preventing Plaintiff from using it and accessing the business.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC §1129B.3.4; 2019 CBC § 11B-502.4.** The designated disabled parking spaces have slopes and cross slopes that are greater than two percent (2%). Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet and/or mobility device may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.** The loading/unloading access aisle adjacent to the designated disabled parking spaces has surface slopes greater than two percent (2%). Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet and/or mobility device may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.3.** The words "NO PARKING," which are required to be painted in the loading/ unloading access aisle, were missing (and/or were completely faded such that the words were no longer visible). As a result, non-disabled patrons parked in

the loading/unloading access aisle, blocking Plaintiff from being able to use the access aisle. Plaintiff, a mobility device user, needs extra space to be able to safely exit a vehicle and unload Plaintiff's mobility device. Plaintiff has difficulty disembarking from a vehicle, which poses a greater risk of injury to Plaintiff and can cause Plaintiff humiliation and/or frustration. Plaintiff cannot access the Property safely if Plaintiff cannot use an accessible parking space and adjacent access aisle.

**VIOLATION of 1991 ADAS §§ 4.3.8, 4.5.2; 2010 ADAS §§ 302.1, 303.2, 303.3, 303.4, 403.2; 2010 CBC §§ 1133B.7.1, 1133B.7.4; 2019 CBC §§ 11B-302.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-403.2.** There are excess changes in level (of more than one-half inch) within the parking spaces reserved for disabled patrons. The asphalt is uneven, and has depressions, dips, and divots. The ground has sunken and cracked parts. This makes travelling in this area difficult. These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff's feet and/or mobility device may catch on the uneven ground causing Plaintiff to fall.

**VIOLATION of 1991 ADAS § 4.13.11; 2010 ADAS § 404.2.9; 2010 CBC §1133B.2.5; 2019 CBC § 11B-404.2.9.** The front entrance door exceeds the maximum allowable opening force of five pounds (5 lbs.). Plaintiff requires an accessible entrance that does not require the use of excessive force to open. The accessible entrance must be clearly marked with an ISA sign so that Plaintiff can

find it.

**VIOLATION of 1991 ADAS § 4.5.3; 2010 ADAS § 302.2; 2010 CBC § 1124B.3; 2019 CBC § 11B-302.2.** Carpets and mats must be securely attached to a stable surface. The floor mat at the front entrance door is not securely attached, which can cause rolling and buckling, making maneuvering with a mobility device more difficult. Plaintiff's mobility device, and/or feet can easily catch on unsecured mats and/or carpets, causing Plaintiff to trip. The presence of an unsecured floor mat denied Plaintiff full and equal use or access by making it difficult and/or uncomfortable for Plaintiff to traverse inside the business. The barrier also deterred/deters Plaintiff from visiting the Property because it would make it difficult and/or uncomfortable for Plaintiff to traverse inside the business.

**VIOLATION of 1991 ADAS § 4.13.11; 2010 ADAS § 404.2.9; 2010 CBC §1133B.2.5; 2019 CBC § 11B-404.2.9.** The restroom's door opening force exceeds the maximum allowable opening force of five pounds (5 lbs.). Plaintiff requires an accessible restroom that does not require Plaintiff to use excessive force to open.

**VIOLATION of 1991 ADAS § 4.13.10; 2010 ADAS § 404.2.8.1; 2010 CBC § 1133B.2.5.1; 2019 CBC § 11B-404.2.8.1.** The restroom entrance door to the business at your property returned to a closed position in less than five (5) seconds when our client visited your property. Our client cannot move out of doorways as quickly as others without disabilities. Therefore, the restroom entrance door closing too quickly caused our client difficulty and frustration because they need extra time

to pass through, given their mobility impairment, without the risk of being injured by the closing door.

29. Plaintiff personally encountered the foregoing barriers on (and the foregoing barriers existed) during each and every one of Plaintiff's visits.

30. These inaccessible conditions denied Plaintiff full and equal access, and caused Plaintiff difficulty, humiliation, embarrassment, and/or frustration.

31. Defendants knew that the foregoing architectural barriers prevented access. Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Standards for Accessible Design ("ADAS"), ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), and/or the California Building Code ("CBC") was intentional.

32. Plaintiff intends and plans to visit the Property again soon. Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

33. Defendants failed to maintain in working and usable condition those features necessary to provide ready access to persons with disabilities.

34. Defendants have the financial resources to remove all of the aforementioned barriers without much expense or difficulty in order to make their Property and Business more accessible to their mobility impaired customers. The

removal of these barriers is readily achievable. The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

35. On information and belief, Plaintiff alleges that Defendants refuse to remove all of the aforementioned barriers.

36. On information and belief, Plaintiff alleges that Defendants' failure to remove all of the aforementioned barriers was/is intentional, because the barriers are logical and obvious. During all relevant times, Defendants had authority, control, and dominion over these conditions; thus, the failure to provide accessible facilities was not a mishap, but rather an intentional act.

37. These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's experts and/or access agents. *See Doran v. 7-ELEVEN, Inc.*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them); *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634 (2019).

## IV. FIRST CAUSE OF ACTION: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq.*)

(Against All Defendants)

38. Plaintiff alleges and incorporates by reference each and every

allegation contained in all prior paragraphs of this complaint.

39. Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation. 42 U.S.C. § 12182(a).

40. Defendants discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or accommodations they offered during each visit, and each incident of a deterred visit.

41. The acts and omissions of Defendants herein were/are in violation of Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36, *et seq.*

42. Pursuant to the ADA, discrimination is a "failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

43. The ADA requires removal of architectural barriers in existing

facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable"). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Barriers are defined by reference to the ADA Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at Part 36, Appendix A.

44. If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

45. Defendants can remove the architectural barriers at their facility without much difficulty or expense. Defendants violated the ADA by failing to remove the barriers because removal was readily achievable. For instance, there are companies that can repaint parking areas for as little as $350. Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

46. Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make

their services available through alternative methods that are readily achievable.

47. On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

48. The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

49. Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons to the maximum extent feasible.

50. The ADA also requires reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(A)(ii).

51. Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

52. Plaintiff seeks a finding from this Court that Defendants violated the

ADA, so that Plaintiff may pursue damages under California's Unruh Civil Rights Act.

53. Here, Defendants' failure to make sure that accessible facilities were available to, and ready to be used by, Plaintiff was/is a violation of law.

54. Plaintiff would like to continue to frequent the Property; however, Plaintiff is deterred from doing so because Plaintiff has been discriminated against and is aware of accessibility barriers at the Property.

55. Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with federal and state disability access laws, and remediation of the existing access violations (i.e., removal of the existing barriers) at the Property.

## V. SECOND CAUSE OF ACTION: VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT

**(Cal. Civ. Code §§ 51-53)**

(Against All Defendants)

56. Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

57. California Civil Code § 51 states, in part: "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

58. California Civil Code § 51 also states, in part: "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

59. California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act ("UCRA").

60. The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA. Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

61. Defendants' above-mentioned acts and omissions have violated the UCRA by denying Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disabilities.

62. Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff's rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages. *See* Cal. Civ. Code § 51(f), 52(a).

63. Because Defendants' violation of the UCRA resulted in difficulty, discomfort, humiliation, frustration, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages. *See* Cal. Civ. Code § 55.56(a), (c).

64. Plaintiff was (actually) damaged by Defendants' wrongful conduct. Plaintiff seeks actual damages, and statutory minimum damages of four thousand

dollars ($4,000) for each offense.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For injunctive relief compelling Defendants to comply with the Americans with Disability Act. Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.
2. Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.
3. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to Cal. Civ. Code § 52.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Dated: August 17, 2026

THE LAW OFFICE OF HAKIMI & SHAHRIARI

By: ______________________________
NESTOR ROMERO, ESQ.
Attorney for Plaintiff, Pedro Siqueiros